IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ARTURO MERCADO, et al.,                  §
                                         §
                        Plaintiffs,      §
                                         §   Civil Action No. 3:15-CV-3481-D
VS.                                      §   (Consolidated with Civil Action No.
                                         §   3:15-CV-4008-D)
DALLAS COUNTY, TEXAS, et al.,            §
                                         §
                        Defendants.      §

MEMORANDUM OPINION
AND ORDER

Plaintiffs in these consolidated actions bring claims under 42 U.S.C. § 1983 against defendants Dallas County, Texas ("Dallas County") and Dallas County Sheriff Lupe Valdez ("Sheriff Valdez"), alleging that defendants violated their Fourth, Fifth, and Fourteenth Amendment rights by refusing to grant them immediate release on bond and by detaining them based on immigration holds after they were otherwise eligible for release.  Defendants move to dismiss under Fed. R. Civ. P. 12(b)(6), contending that plaintiffs have failed to state a claim on which relief can be granted and that Sheriff Valdez is entitled to qualified immunity.  Sheriff Valdez separately moves to require that plaintiffs file a Rule 7(a) reply. For the following reasons, the court grants defendants' motion to dismiss, denies without prejudice as moot Sheriff Valdez's separate request to require a Rule 7(a) reply, and grants plaintiffs leave to replead.

I

The facts in this case are largely undisputed.[1]  Plaintiffs are former detainees[2] of the

Dallas County jail.  They allege that, while they were being held in detention by defendant

Dallas County in connection with state criminal charges, they were the subjects of federal

immigration detainers (U.S. Department of Homeland Security ("DHS") Form I-247), issued

by U.S. Immigrations and Customs Enforcement ("ICE"), a component of DHS.  The

detainers requested that Dallas County detain them for up to 48 hours after the time they

otherwise would have been released, in order to facilitate their arrest by ICE.[3]  According to

plaintiffs' complaints, Dallas County detained plaintiffs for varying periods of time after they

---

[1]In deciding this Rule 12(b)(6) motion, the court construes the complaints in the light most favorable to plaintiffs, accepts all well-pleaded factual allegations, and draws all reasonable inferences in their favor.  *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).  "The court's review [of a Rule 12(b)(6) motion] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

[2]No plaintiff in this case is currently in Dallas County custody.  Although the complaint refers to "inmates," the proper term is more likely "detainees."

[3]For example, the immigration detainer issued for plaintiff Andres Torres Cabrera states that "there is reason to believe the individual is an alien subject to removal from the United States," and it requests that Dallas County

> [m]aintain custody of the subject for a period NOT TO EXCEED 48 HOURS, excluding Saturdays, Sundays, and holidays, beyond the time when the subject would have otherwise been released from your custody to allow DHS to take custody of the subject.

*Mercado* Compl. Ex. A (bold font and underlining omitted).

should have been released, solely on the basis of immigration detainers issued by ICE. Plaintiffs allege that, in doing so, Dallas County and Sheriff Valdez violated their constitutional rights.

Plaintiffs bring these consolidated actions[4] against Dallas County and Sheriff Valdez under 42 U.S.C. § 1983. They allege that Dallas County and Sheriff Valdez are responsible for Dallas County's policy and practice of refusing immediate release on bond of individuals as to whom ICE has issued immigration detainers (resulting in "immigration holds" being placed in their files) by (1) refusing to allow bond for those with immigration holds and (2) detaining individuals subject to immigration holds, even after they have made bail or are otherwise cleared for release. Plaintiffs contend that Dallas County's practice of refusing immediate release on bond of individuals with immigration holds violates plaintiffs' Fifth and Fourteenth Amendment substantive due process right to be free from pretrial detention. They also allege that Dallas County's policy and practice of detaining individuals who otherwise have been cleared for release on the basis of an ICE-issued request to detain that neither satisfies the Fourth Amendment nor shows probable cause to believe that a different

---

[4]In one lawsuit, plaintiffs Arturo Mercado, Pablo Carranza, Sergio Diaz, Jose Arturo Galvan Resendiz, Jose Gutierrez, Heydy Jarquin Jimenez, Jose Lopez-Aranda, Moises Martinez, Javier Navarrete, Efren Perez Villegas, Miguel Rodriguez, Eleazar Saavedra, Andres Torres Cabrera, Moises Vega Costilla, Mario Garibaldi, and Rodolfo Marmolejo sued Dallas County and Sheriff Valdez in her personal and official capacity. *See Mercado v. Dallas Cnty., Tex.*, No. 3:15-CV-3841-D (N.D. Tex.). In the other suit, plaintiffs Ricardo Garza, Carlos Alvarez Castro, Jeremias Cheves, Miguel Flores, Felipe Gonzales Lujan, Luis Hernandez, and Jose Valenciano filed a nearly identical complaint against Dallas County and Sheriff Valdez (in her personal capacity only). *See Garza v. Dallas Cnty., Tex.*, No. 3:15-CV-4008-D (N.D. Tex.). On January 8, 2016 the court consolidated the cases.

criminal offense has been or is being committed violates their Fourth Amendment rights.

Defendants move to dismiss under Rule 12(b)(6)[5] and to dismiss the claims against Sheriff Valdez based on qualified immunity. Sheriff Valdez separately moves to require plaintiffs to file a Rule 7(a) reply. Plaintiffs oppose the motions.

## II

Under Rule 12(b)(6), the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff[s].'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive defendants' motions, plaintiffs' complaints must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

---

[5]Defendants filed their motion to dismiss in the *Mercado* action before the court consolidated the cases. They then filed a nearly identical supplemental motion to dismiss the consolidated action.

complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (brackets omitted) (quoting Rule 8(a)(2)).  Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "'labels and conclusions.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  And "'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U. S. at 555).

III

The court begins by considering plaintiffs' § 1983 claims against Dallas County. "Section 1983 provides a private right of action against parties acting 'under color of any statute, ordinance, regulation, custom, or usage, of any State' to redress the deprivation of rights secured by the United States Constitution or federal law." *Bauer v. Texas*, 341 F.3d 352, 357 (5th Cir. 2003) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988)). "Section 1983 is not itself a source of substantive rights; it merely provides a method for vindicating already conferred federal rights." *Id.* (citing *Albright v. Oliver*, 510 U.S. 266, 271 (1994)).  To prevail on a § 1983 claim, plaintiffs "must show that: 1) the offending conduct was committed by a person acting under color of state law; and 2) the conduct deprived the plaintiff of rights secured by the Constitution or federal law." *Id.* (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)).

Because plaintiffs are suing Dallas County, they also must satisfy additional requirements to recover under § 1983.  A county "can be found liable under § 1983 only

-5-

where the [county] *itself* causes the constitutional violation at issue." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694-95 (1978)) (addressing municipal liability). A county cannot be held liable simply on a theory of *respondeat superior*. *Monell*, 436 U.S. at 691. Accordingly, to recover against Dallas County under § 1983, plaintiffs must prove: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)).

IV

Plaintiffs allege that defendants violated their Fourth Amendment rights by detaining them after they were eligible for release, without probable cause that satisfied the Fourth Amendment,[6] and by detaining certain plaintiffs for more than 48 hours. Defendants move to dismiss plaintiffs' Fourth Amendment-based § 1983 claim on the ground that plaintiffs have failed to plausibly allege a constitutional violation as a result of their pretrial detention in the Dallas County jail.

---

[6]Plaintiffs allege that "[t]he moving force for [their Fourth Amendment] claim is Dallas County's policy of honoring ICE requests to detain and detaining individuals subject to an immigration hold, even after those individuals are otherwise cleared for release." *Mercado* Compl. ¶ 32.

A

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures, shall not be violated[.]" U.S. Const. amend. IV. "Pretrial detention constitutes a 'seizure' . . . within the meaning of the Fourth Amendment." *Whittington v. Maxwell*, 455 Fed. Appx. 450, 458 (5th Cir. 2011) (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998)).

Under the Fourth Amendment, "a fair and reliable determination of probable cause" must be provided "as a condition for any significant pretrial restraint of liberty." *Baker v. McCollan*, 443 U.S. 137, 142 (1979) (citation omitted); *see also Gerstein v. Pugh*, 420 U.S. 103, 114 (1975) ("[W]e hold that the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest."). The Supreme Court has defined "probable cause" as "facts and circumstances 'sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense.'" *Gerstein*, 420 U.S. at 111-12 (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). "Probable cause exists if, under the totality of circumstances, there is a fair probability that . . . an illegal act is taking place." *United States v. Thompson*, 2012 WL 1161609, at *3 (N.D. Tex. Apr. 9, 2012) (Fitzwater, C.J.) (citing *United States v. Newman*, 472 F.3d 233, 236-37 (5th Cir. 2006)).

B

The court grants defendants' motion to dismiss the § 1983 Fourth Amendment claims of those plaintiffs who have failed to plausibly allege that they had "pa[id] bail or [were]

-7-

otherwise eligible for release" but were detained solely on the basis of an ICE-issued request to detain.  *See Mercado* Compl. ¶ 28; *Garza* Compl. ¶ 28.

Plaintiffs allege that bond was set in amounts ranging from $2,500 to $100,000 for the following *Mercado* plaintiffs: Arturo Mercado, Pablo Carranza, Sergio Diaz, Jose Arturo Galvan Resendiz, Jose Gutierrez, Heydy Jarquin Jimenez, Jose Lopez-Aranda, Moises Martinez, Javier Navarrete, Efren Perez Villegas, Eleazar Saavedra, and Andres Torres Cabrera.  They assert that bond was set in amounts ranging from $500 to $102,500 for all of the *Garza* plaintiffs (Ricardo Garza, Carlos Alvarez Castro, Jeremias Chevez, Miguel Flores, Filipe Gonzalez Lujan, Luis Hernandez, and Jose Valenciano).  With respect to each of these individuals, plaintiffs allege that an immigration hold was placed on the individual and that "[t]he immigration hold resulted in pretrial detention due to Dallas County's practice of refusing immediate release on bond to individuals with immigration holds."[7]  *Mercado* Compl. ¶ 16; *Garza* Compl. ¶ 16.

Defendants contend that plaintiffs have failed to state a viable Fourth Amendment claim because, *inter alia*, there is no factual or legal basis to support plaintiffs' claims that their Fourth Amendment rights were violated based on defendants' purported practice of "refusing to allow bond."  They argue that as to the plaintiffs named above, there is no allegation that any one of them actually tendered bond in the requisite amount in order to become eligible for release on bond, and, absent specific allegations that the plaintiffs

---

[7]Plaintiffs use slightly different wording with respect to Sergio Diaz and Jose Arturo Galvan Resendiz, but the allegations are substantially the same.

actually posted bonds, they did not have a right to be released regardless of the existence of an immigration detainer.  The court agrees.

In *Tovar v. United States*, 2000 WL 425170 (N.D. Tex. Apr. 18, 2000) (Fitzwater, J.), this court held that although an immigration detainer had been issued concerning the plaintiff, because the plaintiff did not post the bail that a county magistrate set on the charges pending against her, "[a] reasonable trier of fact could only find that [she] remained in the county jail because she did not post the bail[.] . . .  The detainer itself did not deprive [the plaintiff] of her freedom during the time she was held under the terms of the county bail order." *Id.* at *6.  Similarly, in the present case, without an allegation that the plaintiffs listed above actually posted the bail that was set on the charges pending against them (or, at the very least, attempted to post bail but were refused due to the ICE detainer), the only plausible inference that the court can reasonably draw is that they were held in the Dallas County jail because of their failure to post bail, not because of the immigration detainers lodged against them.  *Id.*

In response to defendants' motion, plaintiffs contend that "[i]n two cited files, Dallas County explicitly tied immigration holds to a directive forbidding bond," and they argue that "[f]or the purposes of a motion to dismiss, based on this evidence, it is plausible that Dallas County would not allow bond for any Plaintiff with an immigration hold."  Ps. 2/12/16 Br. 19.  But the allegation that two of the plaintiffs' files contained a "no bond" notation is insufficient, without more, to enable the court to reasonably infer that, but for the immigration hold, these two plaintiffs and the other plaintiffs would have been "otherwise

eligible for release." *Mercado* Compl. ¶ 28; *Garza* Compl. ¶ 28.  Stated differently, even considering the "no bond" notation in these two plaintiffs' files, there is still no allegation that these plaintiffs or the plaintiffs listed above posted bonds and, as a result, had a right to be immediately released, or attempted to post bonds but were denied release due to ICE detainers.

Plaintiffs also argue that attempting to post bond is known as a futile exercise for those with immigration holds because posting bond will not result in immediate release, and that tendering bond is not an absolute requirement to filing suit.  The court at this point expresses no view on plaintiffs' futility argument.  Plaintiffs allege, in general terms, that

> [i]f an individual with an immigration hold attempts to post bond in Dallas County, and Dallas County allows the bond, Dallas County will not immediately release the individual. Instead, Dallas County will maintain custody for transfer to ICE. Dallas County's practices are widely known.  As a result, attempting to post bond is known as a futile exercise for those with immigration holds, because it will not result in immediate release.  The scheme has predictable effects.  Because Dallas County will not immediately release those on bond, individuals with immigration holds generally do not attempt to post bond, and Dallas County maintains pretrial detention over almost all individuals with immigration holds.

*Mercado* Compl. ¶ 12 (bold font omitted); *Garza* Compl. ¶ 12 (bold font omitted).  These allegations are insufficient to plausibly plead, for each of the individuals named above, that the individual did not post bond because he believed that doing so would be futile.  Even at the motion to dismiss stage, where the court must construe the complaints in the light most favorable to plaintiffs, accept all well-pleaded factual allegations, and draw all reasonable

inferences in plaintiffs' favor, plaintiffs cannot state a plausible claim based facts that have not been alleged.

Accordingly, because the plaintiffs listed above have not plausibly pleaded that they posted bail or were "otherwise cleared for release," *Mercado* Compl. ¶ 32; *Garza* Compl. ¶ 33, their § 1983 claim based on an alleged violation of the Fourth Amendment must fail. The court therefore grants defendants' motion to dismiss the following plaintiffs' Fourth Amendment-based § 1983 claims: Arturo Mercado, Pablo Carranza, Sergio Diaz, Jose Arturo Galvan Resendiz, Jose Gutierrez, Heydy Jarquin Jimenez, Jose Lopez-Aranda, Moises Martinez, Javier Navarrete, Efren Perez Villegas, Eleazar Saavedra, Andres Torres Cabrera; Moises Vega Costilla[8]; Ricardo Garza,[9] Carlos Alvarez Castro, Jeremias Chevez, Miguel Flores, Filipe Gonzalez Lujan, Luis Hernandez, and Jose Valenciano.

C

1

Defendants do not dispute that plaintiffs have plausibly alleged that Miguel Rodriguez, Mario Garibaldi, and Rodolfo Marmolejo were detained based on the existence of an immigration detainer after they otherwise would have been entitled to be released due

---

[8]Although plaintiffs do not allege that bond was set for plaintiff Moises Vega Costilla—they instead allege that a state district court granted his motion for new trial in April 2015—they also do not plausibly allege any facts that would suggest that Costilla was otherwise eligible for release. Accordingly, for the reasons explained, the court grants defendants' motion to dismiss Costilla's Fourth Amendment § 1983 claim.

[9]Plaintiffs allege that Ricardo Garza was not released after he tendered a $25,000 bond following his arrest in Grand Prairie, Texas. But they do not allege that he similarly posted the $100,000 or $25,000 bail that was set once he was transferred to Dallas County.

to developments in their criminal cases.[10]  They move to dismiss the Fourth Amendment claims of these plaintiffs, however, contending that there is no allegation that probable cause was lacking to support the immigration detainers and that there is no requirement that there be probable cause to believe these plaintiffs had committed a *different* criminal offense unrelated to the issue of whether plaintiffs were detainable as aliens subject to removal.[11]

In their response, plaintiffs contend that, even though the federal government and its agents may, in some circumstances, and without a warrant, arrest and detain individuals suspected of immigration violations, this power does not extend to Dallas County.[12]

---

[10]Plaintiffs allege that Miguel Rodriguez was detained until March 22, 2015, after his criminal case was "disposed of" on March 20, 2015; that Mario Garibaldi was detained until August 21, 2015, after the state filed on August 20, 2015 a "'Motion to Withdraw its Motion to Revoke or its Motion to Proceed with Adjudication in the case against Mario Garibaldi"; and that Rodolfo Marmolejo was detained until October 20, 2015, after paying an outstanding fine on October 19, 2015. *Mercado* Compl. ¶ 17.

[11]Defendants also contend that, even if the immigration detainers were issued in the absence of probable cause, there is no allegation that the immigration detainers were facially invalid.  They posit that it is well-established that, when a law enforcement officer detains a person based on some form of legal process authorizing the detention, the official's actions do not violate the Fourth Amendment so long as the process relied upon is facially valid. And they contend that although plaintiffs allege that Texas law does not authorize Dallas County to arrest or detain a person based on a federal detainer, alleged violations of state law do not constitute a deprivation of federal rights actionable under § 1983.  Because the court concludes that plaintiffs have failed to plausibly allege that defendants lacked probable cause to detain Rodriguez, Garibaldi, or Marmolejo, and it is dismissing plaintiffs' Fourth Amendment § 1983 claim on this basis, the court will not address defendants' other grounds for dismissal.

[12]Plaintiffs argue that the power to arrest without a warrant under the federal immigration statutes extends only to those specifically authorized by the Attorney General of the United States, and that the Attorney General has not authorized Dallas County officials to make arrests without a warrant; ICE cannot unilaterally delegate its federal immigration authority to Dallas County through immigration detainers; and ICE officers are generally

Plaintiffs maintain that for Dallas County to further detain them after they were otherwise eligible for release, it was required under the Fourth Amendment to have probable cause to believe, for each plaintiff, "that [the plaintiff] has committed, is committing, or is about to commit a crime." Ps. 1/8/16 Br. 12 (quoting *Fontenot v. Cormier*, 56 F.3d 669, 674 (5th Cir. 1995)). Plaintiffs argue that because immigration violations are generally *civil* in nature, and unlawful presence in the United States is not a crime, the immigration detainers (which are based on a belief that the individual is an alien subject to removal from the United States) do not show probable cause to believe that a *crime* has been committed and thus do not provide probable cause sufficient for Dallas County to arrest the plaintiffs.[13]

2

The parties appear to agree that, under Fourth Amendment jurisprudence, absent "probable cause," defendants were not permitted to detain the plaintiffs after they were otherwise eligible for release. Probable cause exists when the arresting officer has reason

---

only permitted to make a warrantless arrest when an alien is likely to escape before an arrest warrant can be obtained, and, in this case, Dallas County received immigration detainers weeks to months before it held each plaintiff, and ICE could have used that time to obtain a warrant. In sum, they maintain that "neither Dallas County nor ICE had authority to arrest Plaintiffs without [a] warrant." Ps. 1/8/16 Br. 11.

[13]Plaintiffs also argue that, even if Dallas County was permitted to hold them pursuant to the immigration detainers, it was not permitted to hold any plaintiff for more than 48 hours, and at a minimum, the court should refuse to dismiss plaintiffs' Fourth Amendment claims until plaintiffs can determine which plaintiffs were held for more than 48 hours based on the detainer. But plaintiffs do not plausibly allege that Rodriguez, Garibaldi, or Marmolejo was held in Dallas County custody for more than 48 hours after he was otherwise eligible for release. Accordingly, to the extent plaintiffs base their § 1983 claim on the allegation that some plaintiffs were unconstitutionally detained for more than 48 hours, the court dismisses this claim because it has not been plausibly pleaded.

to believe that the suspect has committed or is committing a criminal offense.  *Gerstein*, 420 U.S. at 111-12; *see also Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) ("a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed.").  Generally, a reasonable belief that the suspect has committed or is committing a *civil* offense is insufficient to withstand Fourth Amendment scrutiny.[14]  *See, e.g., John Doe v. Metro. Police Dep't of D.C.*, 445 F.3d 460, 469 (D.C. Cir. 2006) ("Because the four Jane Does were arrested for a civil offense, their claims state a cause of action under the Fourth Amendment."); *see also Allen v. City of Portland*, 73 F.3d 232, 237 (9th Cir. 1995) ("probable cause can only exist in relation to criminal conduct"); *McKinney v. Fields*, 2010 WL 3583017, at *6 (E.D. Mich. Sept. 10, 2010) ("The concept of probable cause makes sense only in relation to *criminal* offenses . . . [and as] a result, an arrest for a 'civil infraction,' . . . is 'unreasonable.'" (citations omitted)).

The Supreme Court has characterized deportation and removal proceedings as "civil in nature." *Padilla v. Kentucky*, 559 U.S. 356, 365 (2010); *see also Arizona v. United States*, ___ U.S. ___, 132 S.Ct. 2492, 2505 (2012) ("As a general rule, it is not a crime for a removable alien to remain present in the United States.").  Lower federal courts have done the same.  *See, e.g., Santos v. Frederick Cnty. Bd. of Comm'rs*, 725 F.3d 451, 465 (4th Cir.

---

[14]The court's holding today is limited to the facts alleged and does not address whether, and to what extent, the Fourth Amendment limits *federal* immigration officials (or those to whom immigration authority has been properly delegated) from arresting individuals suspected of immigration violations.

2013) ("Because civil immigration violations do not constitute crimes, suspicion or knowledge that an individual has committed a civil immigration violation, by itself, does not give a law enforcement officer probable cause to believe that the individual is engaged in criminal activity."); *Melendres v. Arpaio*, 695 F.3d 990, 1001 (9th Cir. 2012) ("[B]ecause mere unauthorized presence is not a criminal matter, suspicion of unauthorized presence alone does not give rise to an inference that criminal activity is 'afoot.'" (citation omitted)). In *Santos* the Fourth Circuit held that "absent express direction or authorization by federal statute or federal officials, state and local law enforcement officers may not detain or arrest an individual solely based on known or suspected civil violations of federal immigration law." *Santos*, 725 F.3d at 465.

Plaintiffs contend that defendants were not permitted to detain them unless they had probable cause to believe plaintiffs had committed a crime, and they argue that, because being subject to removal is a *civil* offense, the immigration detainers did not provide defendants with sufficient probable cause to detain them after they were otherwise eligible for release. Even if the court assumes that plaintiffs' statement of the law is generally correct, it nonetheless holds that plaintiffs have not plausibly alleged that Dallas County lacked probable cause to detain Rodriguez, Garibaldi, or Marmolejo.

In their response brief, plaintiffs contend, in reference to the immigration detainer for plaintiff Andres Torres Cabrera (which they attach to the *Mercado* and *Garza* complaints), that "[t]he detainer suggests unlawful presence, but does not show probable cause to believe a crime has been committed. The detainer thus does not provide probable cause sufficient

for Dallas County to arrest Plaintiffs." Ps. 1/8/16 Br. 12-13 (citing *Mercado* Compl. Ex. A).

In their complaints, plaintiffs allege:

> [t]he Torres Cabrera Immigration Detainer states that "there is
> reason to believe [Mr. Torres Cabrera] is subject to removal
> from the United States." Under federal law, being "subject to
> removal" is not a crime. The Immigration Detainer states that
> Mr. Torres Cabrera has a prior felony, but does not state (in
> form or substance) facts showing probable cause that would
> support arrest under the Fourth Amendment, such as probable
> cause to believe that Mr. Torres Cabrera has committed a
> different criminal offense or is committing a different criminal
> offense.

*Mercado* Compl. ¶ 8; *Garza* Compl. ¶ 8. Although these allegations may be sufficient to

plausibly allege that Dallas County did not have probable cause to detain Cabrera, plaintiffs

do not similarly allege that Rodriguez, Garibaldi, or Marmolejo was held on the basis of an

immigration detainer that provided probable cause only on the basis of a civil offense.

Plaintiffs plead that Dallas County detained Rodriguez "based solely on ICE's request to

detain," and that "an immigration hold was placed on [Garibaldi's and Marmolejo's] file[s]."

*Mercado* Compl. ¶ 17. These allegations are insufficient of themselves to plausibly allege

that any of these three plaintiffs was held in Dallas County custody based on probable cause

to believe only that he had committed a *civil* immigration violation.

Because plaintiffs have not plausibly alleged that Dallas County lacked probable

cause to believe Rodriguez, Garibaldi, or Marmolejo had committed a criminal offense,

defendants are entitled to dismissal of these plaintiffs' Fourth Amendment claims.

-16-

V

Plaintiffs also allege § 1983 claims against defendants based on an alleged violation of their substantive due process rights.[15]  They contend that the "moving force" behind these claims is

> Dallas County's practice of refusing immediate release on bond to individuals with immigration holds by (i) refusing to allow bond for those with immigration holds, and (ii) honoring ICE requests to detain and detaining individuals subject to an immigration hold, even after those individuals are otherwise cleared for release, in violation of Texas statutes, the Texas Constitution, and/or the United States Constitution.

*Mercado* Compl. ¶ 24; *Garza* Compl ¶ 24.

A

To the extent plaintiffs base their substantive due process claims on the allegation that Dallas County refused to allow bond for individuals with immigration holds, the court raises *sua sponte* that, for the reasons explained above, *see supra* § IV(B), plaintiffs have failed to plausibly allege that Dallas County or Sheriff Valdez refused to allow the following plaintiffs to post bond and secure their release: Arturo Mercado, Pablo Carranza, Sergio Diaz, Jose Arturo Galvan Resendiz, Jose Gutierrez, Heydy Jarquin Jimenez, Jose Lopez-Aranda, Moises Martinez, Javier Navarrete, Efren Perez Villegas, Eleazar Saavedra, Andres Torres Cabrera,

---

[15]Plaintiffs appear to bring their § 1983 substantive due process claims under both the Fifth and Fourteenth Amendments.  *See Mercado* Compl. ¶ 21; *Garza* Compl. ¶ 21. "Because the due process component of the Fifth Amendment applies only to federal actors, [the court] will analyze [plaintiffs'] claim under the Fourteenth Amendment." *Blackburn v. City of Marshall*, 42 F.3d 925, 930 n.3 (5th Cir. 1995).

Moises Vega Costilla, Ricardo Garza, Carlos Alvarez Castro, Jeremias Chevez, Miguel Flores, Filipe Gonzalez Lujan, Luis Hernandez, or Jose Valenciano. Nor have plaintiffs plausibly pleaded that defendants refused to allow the three remaining plaintiffs—Rodriguez, Garibaldi, or Marmolejo—to post bond. Accordingly, to the extent plaintiffs base their substantive due process claims on Dallas County's alleged practice of "refusing to allow bond for those with immigration holds," *Mercado* Compl. ¶ 24; *Garza* Compl ¶ 24, the court *sua sponte* dismisses these claims.[16]

## B

In their motion to dismiss, defendants contend, *inter alia*, that "because plaintiffs' periods of allegedly improper pretrial detention were 'seizures' covered by the 'specific protections of the Fourth Amendment,' there is no basis for a separate claim under the rubric of substantive due process." Ds. 12/18/15 Br. 9 (quoting *Lawson v. City of Coatesville*, 42 F.Supp.3d 664, 675-76 (E.D. Pa. 2014).[17] The court agrees.

---

[16]A district court has the authority to consider the sufficiency of a complaint and dismiss an action *sua sponte*, as long as the procedure it employs is fair. *See, e.g., Biggers v. BAC Home Loans Servicing, LP*, 767 F.Supp.2d 725, 733 n.7 (N.D. Tex. 2011) (Fitzwater, C.J.) (noting that district court has authority to consider sufficiency of complaint and dismiss action on its own motion as long as procedure employed is fair, raising ground for dismissal *sua sponte*, and concluding that procedure was fair because court was granting leave to replead). Here, because the court is granting plaintiffs leave to replead, it can raise this ground for dismissal *sua sponte*.

[17]In response, plaintiffs cite *United States v. Salerno*, 481 U.S. 739 (1987), and *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772 (9th Cir. 2014) (en banc)—cases in which the validity of statutes restricting bail were addressed in the context of substantive due process—and argue that the Due Process Clause limits Dallas County's ability to restrict pretrial release. In a footnote, they state that, "[i]f the Court finds that this claim[] sounds more appropriately under the Fourth Amendment, despite *Salerno* and *Lopez-Valenzuela*, Plaintiffs request leave

"Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright*, 510 U.S. at 273 (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Plaintiffs' remaining substantive due process claim is based on the allegation that Dallas County honored ICE requests to detain, and detained, individuals subject to immigration holds, even after those individuals were otherwise cleared for release. *See Mercado* Compl. ¶ 24; *Garza* Compl ¶ 24.  This is the same factual basis that plaintiffs rely on to support their Fourth Amendment claim.  As explained above, the Fourth Amendment protects against "unreasonable searches and seizures" by the government.   It is undisputed that pretrial detention constitutes a "seizure" within the meaning of the Fourth Amendment. *Whittington*, 455 Fed. Appx. at 458 (citing *Cnty. of Sacramento*, 523 U.S. at 844).  Because the Fourth Amendment protects against the type of conduct plaintiffs allege in support of their substantive due process claim, this claim is "covered by" the Fourth Amendment and should be analyzed only under that constitutional provision.[18]  *Cnty. of Sacramento*, 523 U.S. at 843; *see also Wilson v. Birnberg*, 667 F.3d 591, 599 (5th Cir. 2012) ("To the extent that [plaintiff] seeks to assert a distinct cause of action under substantive due process, that claim must fail. . . . Here, [plaintiff's] claims are rooted in procedural due process, the Equal

_____

to replead." Ps. 1/8/16 Br. 21 n.14.  For the reasons explained below, *see infra* § VII, the court grants plaintiffs leave to replead this claim.

[18]It is immaterial that the court today dismisses plaintiffs' Fourth Amendment claims under Rule 12(b)(6).

Protection Clause, and the First Amendment.   Those provisions are our exclusive

guideposts."). Accordingly, the court dismisses this claim against Dallas County.

VI

The court now turns to plaintiffs' claims against Sheriff Valdez.  Defendants move

to dismiss these claims under the doctrine of qualified immunity,[19] and Sheriff Valdez

separately moves to require plaintiffs to file a Rule 7(a) reply.

A

Qualified immunity jurisprudence is well settled.  "[G]overnment officials performing

discretionary functions generally are shielded from liability for civil damages insofar as their

conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Qualified immunity applies to state officials sued for constitutional violations under § 1983.

*See id.* at 818 n.30 (citing *Butz v. Economou*, 438 U.S. 478, 504 (1978)); *Palmer v. Johnson*,

193 F.3d 346, 351 (5th Cir. 1999).  "The Supreme Court has characterized the doctrine as

protecting 'all but the plainly incompetent or those who knowingly violate the law.'"  *Cozzo*

*v. Tangipahoa Parish Council-President Gov't*, 279 F.3d 273, 284 (5th Cir. 2002) (quoting

---

[19]Defendants also move to dismiss the *Mercado* plaintiffs' claims against Sheriff
Valdez in her official capacity as duplicative of their claims against Dallas County.  Plaintiffs
do not appear to dispute this basis for dismissal.  Accordingly, the court grants the motion
and dismisses the claims against Sheriff Valdez in her official capacity.  *See Monell*, 436
U.S. at 690 n.55 (stating that a suit against a government official in her official capacity is
"only another way of pleading an action against an entity of which [the official] is an
agent.").

*Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

"To decide whether defendants are entitled to qualified immunity, the court must first answer the threshold question whether, taken in the light most favorable to plaintiffs as the parties asserting the injuries, the facts they have alleged show that defendants' conduct violated a constitutional right." *Ellis v. Crawford*, 2005 WL 525406, at *3 (N.D. Tex. Mar. 3, 2005) (Fitzwater, J.) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?  This must be the initial inquiry."))[20]  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201. "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id*.  "Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable." *Wallace v. Cnty. of Comal*, 400 F.3d 284, 289 (5th Cir. 2005).  "The objective reasonableness of allegedly illegal conduct is assessed in light of the legal rules clearly established at the time it was

---

[20]*Saucier*'s two-step procedure for determining qualified immunity is no longer mandatory. *See Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009).  Courts are free to consider *Saucier*'s second prong without first deciding whether the facts show a constitutional violation. *Id*. at 236.  The "decision does not prevent the lower courts from following the *Saucier* procedure; it simply recognizes that those courts should have the discretion to decide whether that procedure is worthwhile in particular cases." *Id*. at 242.

taken." *Salas v. Carpenter*, 980 F.2d 299, 310 (5th Cir. 1992) (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).   "'The defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the' plaintiff's asserted constitutional or federal statutory right." *Cozzo*, 279 F.3d at 284 (quoting *Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001)).

"[W]hen a plaintiff sues a public official under § 1983, the district court must insist on heightened pleading by the plaintiff." *Morin v. Caire*, 77 F.3d 116, 121 (5th Cir. 1996) (citing *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) (en banc)).   Although a plaintiff may comply with ordinary pleading standards in his initial complaint, and need not anticipate a qualified immunity defense, "[w]hen a public official pleads the affirmative defense of qualified immunity in his answer, the district court may, on the official's motion or on its own, require the plaintiff to reply to that defense in detail" pursuant to Rule 7(a).   *Schultea*, 47 F.3d at 1433.   "[T]he reply must be tailored to the assertion of qualified immunity and fairly engage its allegations." *Id.*   "Heightened pleading requires allegations of fact focusing specifically on the conduct of the individual who caused the plaintiffs' injury." *Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999).   The case should not be allowed to proceed unless plaintiff can assert specific facts that, if true, would overcome the defense.   *See Morin*, 77 F.3d at 120 ("Public officials are entitled to qualified immunity from suit under § 1983 unless it is shown by specific allegations that the officials violated clearly established law."); *Schultea*, 47 F.3d at 1434 ("The district court need not allow any discovery unless it finds

that plaintiff has supported his claim with sufficient precision and factual specificity[.]").

The "district court's discretion not to [require a Rule 7(a) reply] is narrow indeed when

greater detail might assist." *Schultea*, 47 F.3d at 1434; *see also Reyes*, 168 F.3d at 161

("Faced with sparse details of claimed wrongdoing by officials, trial courts ought routinely

require plaintiffs to file a reply under [Rule] 7(a) to qualified immunity defenses.").

## B

The court concludes above that none of the *Mercado* or *Garza* plaintiffs has plausibly

alleged that his Fourth or Fourteenth Amendment rights have been violated as a result of his

pretrial detention in the Dallas County jail.  Because plaintiffs have failed to state a facially

plausible claim that their constitutional rights have been violated, "there is no necessity for

further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.  Accordingly,

plaintiffs' § 1983 claims asserted against Sheriff Valdez in her individual capacity are

dismissed, and Sheriff Valdez's motion for a Rule 7(a) reply is denied without prejudice as

moot.[21]

## VII

Plaintiffs request leave to amend if the court dismisses any of their claims.  "[D]istrict

courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before

dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the

---

[21]Defendants move to dismiss plaintiffs' claims for injunctive relief under the doctrine of mootness.  Because the court is dismissing all of the plaintiffs' claims, it need not address defendants' motion to dismiss plaintiffs' claims for injunctive relief.

court that they are unwilling or unable to amend in a manner that will avoid dismissal." *In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (quoting *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)).  Because there is no indication that plaintiffs cannot, or are unwilling to, replead in an attempt to state claims against defendants, the court grants them leave to file an amended consolidated complaint within 28 days of the date this memorandum opinion and order is filed.[22]  Moreover, allowing plaintiffs to amend their complaint will ensure that the court has employed a fair procedure in raising certain grounds for dismissal *sua sponte*.  *See supra* note 16.

\* \* \*

For the reasons explained, the court grants defendants' motion to dismiss and supplemental motion to dismiss, denies without prejudice as moot Sheriff Valdez's separate request to require a Rule 7(a) reply, and grants plaintiffs leave to replead.

**SO ORDERED**.

June 7, 2016.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

----

[22]To the extent plaintiffs intend to pursue their § 1983 claims against Sheriff Valdez in an amended complaint, they are now on notice that Sheriff Valdez has invoked the qualified immunity doctrine as a defense.  Accordingly, if plaintiffs file an amended complaint that includes claims against Sheriff Valdez, they should plead these claims with the heightened pleading that the court would require if it ordered plaintiffs to file a Rule 7(a) reply.

-24-