IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ARTURO MERCADO, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. 3:15-CV-3481-D |
| VS. | § | (Consolidated with Civil Action No. |
| | § | 3:15-CV-4008-D) |
| DALLAS COUNTY, TEXAS, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

Plaintiffs in these consolidated actions bring claims under 42 U.S.C. § 1983 against

defendant Dallas County, Texas ("Dallas County"), alleging that it violated their Fourth and

Fourteenth Amendment rights by refusing to grant them immediate release on bond and by

detaining them based on immigration holds after they were otherwise eligible for release.

Dallas County moves in a first amended motion[1] to dismiss under Fed. R. Civ. P. 12(b)(1),

(6), and (7) for lack of subject matter jurisdiction, failure to state a claim upon which relief

can be granted, and failure to join an indispensable party under Rule 19. It separately moves

under Rule 12(f) to strike the exhibits to plaintiffs' first amended complaint ("amended

complaint"). Plaintiffs move to lift the discovery stay currently in place and to compel

---

[1]Dallas County filed its motion to dismiss on August 19, 2016 and filed its first
amended motion on August 30, 2016. In the first amended motion, Dallas County has
withdrawn the affidavit of Jim Patterson that it filed in support of its motion in order to assert
a facial attack in lieu of a factual attack on the court's subject matter jurisdiction. In this
memorandum opinion and order, the court will refer to the amended motion as Dallas
County's motion to dismiss. The original motion is deemed to have been superseded by the
first amended motion.

Dallas County to produce their individual immigration detainers.  For the following reasons, the court grants in part and denies in part Dallas County's motion to dismiss, denies Dallas County's motion to strike, and denies plaintiffs' motion to compel detainers and lift stay as moot.

I

Because this case is the subject of a prior memorandum opinion and order, *see Mercado v. Dallas County, Texas*, 2016 WL 3166306 (N.D. Tex. June 7, 2016) (Fitzwater, J.) ("*Mercado I*"), the court will recount only the background facts and procedural history that are pertinent to this decision.

Plaintiffs are former detainees of the Dallas County jail ("DCJ").[2]  They allege that, while they were being held in detention by Dallas County in connection with state criminal charges, they were the subjects of federal immigration detainers issued by U.S. Immigration

---

[2]In deciding Dallas County's Rule 12(b)(6) motion, the court construes the amended complaint in the light most favorable to plaintiffs, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in plaintiffs' favor. *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).  "The court's review [of a Rule 12(b)(6) motion] is limited to the [amended] complaint, any documents attached to the [amended] complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the [amended] complaint."  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

A Rule 12(b)(1) motion can mount either a facial or factual challenge.  *See, e.g., Hunter v. Branch Banking & Tr. Co.*, 2013 WL 607151, at *2 (N.D. Tex. Feb. 19, 2013) (Fitzwater, C.J.) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981)).  When a party makes a Rule 12(b)(1) motion without including evidence, the challenge to subject matter jurisdiction is facial.  *Id*.  The court assesses a facial challenge as it does a Rule 12(b)(6) motion in that it "looks only at the sufficiency of the allegations in the pleading and assumes them to be true. If the allegations are sufficient to allege jurisdiction, the court must deny the motion."  *Id*. (citation omitted) (citing *Paterson*, 644 F.2d at 523).

and Customs Enforcement ("ICE"), an agency of the U.S. Department of Homeland Security ("DHS"), that requested, *inter alia*, that Dallas County detain them for up to 48 hours after the time they otherwise would have been released, in order to facilitate their arrest by ICE. According to the amended complaint, each plaintiff either attempted to post bond and was denied pretrial release due to an ICE detainer or did not attempt to post bond because he believed that doing so would be futile.  In addition, after each plaintiff was cleared for release,[3] he was detained solely on the basis of the ICE detainer.

In their amended complaint, plaintiffs sue Dallas County[4] under 42 U.S.C. § 1983. They allege that Dallas County did not allow them immediate release on bond,[5] in violation of their Fourth and Fourteenth Amendment rights, and detained them after they were otherwise cleared for release, without requiring probable cause to believe that they had committed a criminal offense,[6] in violation of their Fourth Amendment rights.  Dallas County moves to dismiss under Rules 12(b)(1), (6), and (7).  It also moves under Rule 12(f) to strike the exhibits attached to plaintiffs' amended complaint.  Plaintiffs oppose Dallas County's

---

[3]Plaintiffs allege that each plaintiff was detained after (i) Dallas County dropped all pending criminal charges, (ii) the detainee was found innocent of all pending criminal charges, (iii) the detainee pleaded guilty but received no additional jail time, or (iv) the detainee pleaded guilty and served his sentence in the DCJ.

[4]Although plaintiffs initially sued Dallas County Sheriff Lupe Valdez ("Sheriff Valdez"), they do not name Sheriff Valdez as a defendant in their amended complaint.

[5]All plaintiffs except Mario Garibaldi and Rodolfo Marmolejo assert the § 1983 claim for denial of pretrial release.

[6]Plaintiffs refer to this claim as their "overdetention" claim and assert it on behalf of all plaintiffs except Sergio Diaz and Ricardo Garza.

motions and move to lift the discovery stay currently in place and to compel Dallas County to produce plaintiffs' ICE detainers.

## II

The court first considers Dallas County's motion to dismiss plaintiffs' claims under Rules 12(b)(1), in which it challenges plaintiffs' standing.[7]

## A

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). A Rule 12(b)(1) motion can mount either a facial or factual challenge. *See, e.g., Hunter v. Branch Banking & Tr. Co.*, 2013 WL 607151, at *2 (N.D. Tex. Feb. 19, 2013) (Fitzwater, C. J.) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981)). When a party makes a Rule 12(b)(1) motion without including evidence, the challenge to subject matter jurisdiction is facial. *Id.* The court assesses a facial challenge as it does a Rule 12(b)(6) motion in that it "looks only at the sufficiency of the allegations in the pleading and assumes them to be true. If the allegations are sufficient to allege jurisdiction, the court must deny the motion." *Id.* (citation omitted) (citing *Paterson*, 644 F.2d at 523). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that

---

[7]"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (citations omitted).

jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (citations omitted).

B

The standing doctrine addresses the question of who may properly bring suit in federal court, and "is an essential and unchanging part of the case-or-controversy requirement of Article III."[8] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). It "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). To establish standing, a plaintiff must meet both constitutional and prudential requirements. *See, e.g., Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 560 (5th Cir. 2001). Dallas County contends that plaintiffs lack constitutional standing, which requires that a litigant establish three elements: (1) an injury-in-fact that is concrete and actual or imminent, not hypothetical; (2) a fairly traceable causal link between the injury and the defendants' actions; and (3) that the injury will likely be redressed by a favorable decision. *See, e.g., Bennett v. Spear*, 520 U.S. 154, 162 (1997); *Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009).

C

Dallas County maintains that plaintiffs cannot meet the "causal link" requirement of constitutional standing with respect to their "overdetention" claim because 8 C.F.R. §

---

[8]"'Standing is an issue of subject matter jurisdiction, and thus can be contested by a Rule 12(b)(1) motion to dismiss.'" *Little v. Tex. Attorney Gen.*, 2015 WL 5613321, at *2 n.5. (N.D. Tex. Sept. 24, 2015) (Fitzwater, J.) (citation omitted), *aff'd*, 655 Fed. Appx. 1027 (5th Cir. 2016).

-5-

287.7(d) provides that the local law enforcement agency "shall" maintain custody of an alien pursuant to an ICE detainer, and plaintiffs' alleged detention in the DCJ after they were otherwise eligible for release was caused by the independent action of ICE in issuing the immigration detainers, not by Dallas County.  Regarding plaintiffs' § 1983 claim based on Dallas County's alleged failure to allow bond, Dallas County contends that plaintiffs have failed to allege that Dallas County or Dallas County Sheriff Lupe Valdez ("Sheriff Valdez") had the authority to set bond or to allow them to post bond in connection with the state criminal charges pending against them (only the presiding judge in these cases had authority to set bonds in connection with the state criminal charges); plaintiffs do not allege that they actually tendered bond in the requisite amount in order to become eligible for release; and plaintiffs have therefore failed to demonstrate a causal connection between the injury complained of (denial of bond) that is fairly traceable to Dallas County or Sheriff Valdez and is not the independent action of a third party not before the court (the presiding judge in each respective criminal case).

Plaintiffs respond that Dallas County's standing argument raises issues that should be addressed on the merits (i.e., whether Dallas County is ultimately responsible for the overdetention of plaintiffs and whether it was futile for plaintiffs to attempt to post bail); that Dallas County's treatment of plaintiffs (i.e., detaining them for 48 hours rather than almost instantaneously transferring them to ICE custody) was a policy choice that resulted in plaintiffs' overdetention; that plaintiffs did not post bail because attempting to do so is known to be futile for those with immigration holds because it will not result in immediate

release and it is Dallas County's policy choices that caused plaintiffs' pretrial detention, regardless of whether plaintiffs attempted to post bail; and that Dallas County's policies and practices removed the possibility of pretrial release because a detainee with an immigration hold will not be released even if he posts bail, thus nullifying the judges' decisions to set bail for the plaintiffs.

D

Defendants do not dispute that plaintiffs were injured for purposes of Article III standing or that their injuries are redressable. To the extent Dallas County challenges the "fairly traceable" element of standing, the court rejects Dallas County's arguments, concluding that plaintiffs have adequately pleaded the facts necessary for the court to conclude that they have Article III standing.

"[T]he fairly traceable element of standing doctrine imposes a causation standard that is lower than the tort standard of proximate causation." *TF-Harbor, LLC v. City of Rockwall, Tex.*, 18 F.Supp.3d 810, 820 (N.D. Tex. 2014) (Fitzwater, C.J.) (citing *League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 431 (5th Cir. 2011)), *aff'd*, 592 Fed. Appx. 323 (5th Cir. 2015); *see also, e.g., Rothstein v. UBS AG*, 708 F.3d 82, 91-92 (2d Cir. 2013) (collecting cases and discussing difference between "fairly traceable" standard and proximate causation). "[T]he fairly traceable element does not require that the defendant's challenged action be the last act in the chain of events leading to the plaintiff's injury. *TF-Harbor*, 18 F.Supp.3d at 820 (citing *Bennett*, 520 U.S. at 168-69).

In support of their "overdetention" claim, plaintiffs allege that ICE detainers are

"requests" that Dallas County could have refused to honor,[9] and that it was Dallas County's decision to honor ICE detention requests that resulted in the deprivation of their Fourth Amendment rights. The court addresses below the merits of the parties' arguments regarding the voluntary nature of the ICE detainers. *See infra* § III (C)(3). But for purposes of the "fairly traceable" element of Article III standing, it is sufficient that plaintiffs have alleged that ICE detainers are "requests" that Dallas County could have refused to honor, and that Dallas County's policy of honoring these requests and detaining individuals subject to immigration holds after they were otherwise eligible for release violated their Fourth Amendment rights.

In support of their denial of pretrial release claim, plaintiffs allege that, even when a court nominally sets bail, Dallas County does not allow an opportunity for pretrial release because if a detainee with an ICE detainer posts bail, Dallas County either continues to hold the detainee for transfer to ICE or asks the District Attorney to petition the court to find that the amount of bail is insufficient. In other words, plaintiffs assert that the actions of Dallas County (not of the presiding judge who sets the bail amount) in refusing to release on bond detainees with immigration holds results in depriving these detainees of their constitutional rights. These allegations are sufficient to satisfy the "fairly traceable" element of Article III standing.

As to the plaintiffs who did not post bond in the requisite amount (i.e., all but Jose

---

[9]Plaintiff allege that "[b]ecause detainers are 'requests,' local law-enforcement agencies need not respond or comply with detainers." Am. Compl. ¶ 11.

Lopez-Aranda, Moises Martinez, and Eleazar Saavedra), it is clearly established in this circuit that

> [t]o achieve standing, a plaintiff must have suffered an injury in fact, and generally, "must submit to the challenged policy" before pursuing an action to dispute it. *Ellison v. Connor*, 153 F.3d 247, 254-55 (5th Cir. 1998). However, strict adherence to the standing doctrine may be excused when a policy's flat prohibition would render submission futile. *Ellison*, 153 F.3d at 255 (citing *Moore v. United States Dept. of Agric.*, 993 F.2d 1222 (5th Cir. 1993)).

*LeClerc v. Webb*, 419 F.3d 405, 413 (5th Cir. 2005) (some citations omitted). The plaintiffs who did not post bond have alleged that they could have and would have done so to secure their pretrial release, but because it "was well known that Dallas County refused immediate release on bond for any detainee with an immigration hold," and because they each knew that they were the subject of an immigration hold, they did not attempt to post bond because they believed that doing so would be futile. Am. Compl. ¶ 78. In other words, plaintiffs have alleged that Dallas County's well-known practice of refusing immediate release on bond for any detainee with an immigration hold made it futile for the plaintiffs who were the subject of these immigration holds to post bond. Based on these allegations, the court concludes that "[t]he non-conforming plaintiffs' [posting bond in the requisite amount] would have been a futility for standing purposes," *LeClerc*, 419 F.3d at 414, and that despite their failure to post bond, plaintiffs have standing to pursue their denial of pretrial release claim.

The court thus concludes that plaintiffs have standing to bring their § 1983 claims, and it denies Dallas County's motion to dismiss plaintiffs' claims under Rule 12(b)(1).

III

The court now turns to Dallas County's Rule 12(b)(6) motion to dismiss plaintiffs'

constitutional claims brought under § 1983 for failure to state a claim on which relief can be

granted.

A

In deciding a Rule 12(b)(6) motion, the court evaluates the sufficiency of plaintiffs'

amended complaint "by accepting all well-pleaded facts as true, viewing them in the light

most favorable to the plaintiff[s]." *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855

F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (internal quotation marks and brackets

omitted) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).

To survive a motion to dismiss under Rule 12(b)(6), the plaintiffs must plead "enough facts

to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

554, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard

is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a

defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Twombly*,

550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the

speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more

than the mere possibility of misconduct, the complaint has alleged—but it has not

'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (brackets omitted)

(quoting Rule 8(a)(2)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."  *Id.* at 678.  Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "labels and conclusions." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "[A] formulaic recitation of the elements of a cause of action will not do."  *Id.* (quoting *Twombly*, 550 U.S. at 555).

## B

"Section 1983 provides a private right of action against parties acting 'under color of any statute, ordinance, regulation, custom, or usage, of any State' to redress the deprivation of rights secured by the United States Constitution or federal law." *Bauer v. Texas*, 341 F.3d 352, 357 (5th Cir. 2003) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988)). "Section 1983 is not itself a source of substantive rights; it merely provides a method for vindicating already conferred federal rights."  *Id.* (citing *Albright v. Oliver*, 510 U.S. 266, 271 (1994)).  To prevail on a § 1983 claim, plaintiffs "must show that: 1) the offending conduct was committed by a person acting under color of state law; and 2) the conduct deprived the plaintiff of rights secured by the Constitution or federal law." *Id.* (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)).

Because plaintiffs are suing Dallas County, they also must satisfy additional requirements to recover under § 1983.  A county "can be found liable under § 1983 only where the [county] *itself* causes the constitutional violation at issue." *City of Canton, Ohio*

*v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694-95 (1978)) (addressing municipal liability). A county cannot be held liable simply on a theory of respondeat superior. *Monell*, 436 U.S. at 691. Accordingly, to recover against Dallas County under § 1983, plaintiffs must prove: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)).

C

The court first considers whether plaintiffs have plausibly alleged that their Fourth Amendment rights were violated when they were detained for up to 48 hours[10] after they were otherwise eligible for release, without probable cause to believe that a different criminal offense had been or was being committed.

1

Dallas County contends that plaintiffs' "overdetention" claim does not allege a violation of the Fourth Amendment. It maintains that the touchstone of Fourth Amendment analysis is whether probable cause exists to support a detention; that "[t]he unchallenged

---

[10]Plaintiffs allege that "at times, Dallas County detains individuals for ICE for more than 48 hours," Am. Compl. ¶ 30, and that Dallas County detained plaintiffs Heydy Jarquin Jimenez and Miguel Rodriguez for more than 48 hours for transfer to ICE. Dallas County disputes these allegations, but does move to dismiss plaintiffs' § 1983 claim on the basis that holding a detainee for more than 48 hours based solely on an ICE detainer would not result in a violation of the detainee's constitutional rights.

existence of probable cause to support removability under the immigration laws was all that was required to support the Plaintiffs' immigration detainers," D. 8/19/16 Br. 20; that plaintiffs have not alleged that any of their immigration detainers were not supported by probable cause; that after the plaintiffs were otherwise entitled to release from custody, no plaintiff was detained for a period in excess of the time authorized by the federal regulation; that if any plaintiff was detained after the time he was eligible for release on state criminal charges, such detention was mandated by 8 C.F.R. § 287.7(d); and that even if plaintiffs had alleged that the immigration detainers were unsupported by probable cause, they still would not be able to state a § 1983 Fourth Amendment claim because they do not allege that the immigration detainers were facially invalid.

Plaintiffs respond that, to detain a suspect, the Fourth Amendment requires probable cause to believe that the suspect has committed, is committing, or is about to commit a *crime*; that because immigration violations are generally *civil* in nature, belief that a detainee has committed a run-of-the mill immigration violation does not meet the Fourth Amendment probable cause standard; that although *federal* immigration officials may arrest based on probable cause to believe the suspect has committed a civil immigration violation, Dallas County cannot rely on this exception and instead must satisfy the traditional criminal probable cause standard; that ICE requests to detain do not confer federal immigration authority to arrest, without a warrant, those in the country illegally; that even an ICE officer cannot arrest without a warrant unless special circumstances (not present here) exist, and ICE officers cannot delegate powers that they cannot exercise themselves; that an ICE detainer

suggests unlawful presence, but does not show probable cause to believe a crime has been committed, and an ICE detainer does not therefore provide probable cause sufficient for Dallas County to arrest plaintiffs; that ICE detainers only show probable cause of a *civil* violation, not a crime; and that, even if Dallas County were permitted to hold plaintiffs, it was not allowed to hold them for more than 48 hours, and plaintiffs should be permitted to determine through discovery which plaintiffs were overdetained more than 48 hours.

2

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures, shall not be violated [.]" U.S. Const. amend. IV. "Pretrial detention constitutes a 'seizure' within the meaning of the Fourth Amendment." *Whittington v. Maxwell*, 455 Fed. Appx. 450, 458 (5th Cir. 2011) (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998)).

Under the Fourth Amendment, "a fair and reliable determination of probable cause" must be provided "as a condition for any significant pretrial restraint of liberty." *Baker v. McCollan*, 443 U.S. 137, 142 (1979) (citation omitted); *see also Gerstein v. Pugh*, 420 U.S. 103, 114 (1975) ("[W]e hold that the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest."). The Supreme Court has defined "probable cause" as "facts and circumstances 'sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense.'" *Gerstein*, 420 U.S. at 111-12 (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). "Probable cause exists if, under the totality of circumstances, there is a fair probability that

-14-

. . . an illegal act is taking place."  *United States v. Thompson*, 2012 WL 1161609, at *3 (N.D. Tex. Apr. 9, 2012) (Fitzwater, C.J.) (citing *United States v. Newman*, 472 F.3d 233, 236-37 (5th Cir. 2006)).

The parties appear to agree that, under Fourth Amendment jurisprudence, absent "probable cause," Dallas County was not permitted to detain the plaintiffs after they were otherwise eligible for release.  As stated above, probable cause exists when the arresting officer has reason to believe that the suspect has committed or is committing a *criminal* offense.  *Gerstein*, 420 U.S. at 111-12; *see also Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) ("a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed.").  Generally, a reasonable belief that the suspect has committed or is committing a *civil* offense is insufficient to withstand Fourth Amendment scrutiny.  *See, e.g., John Doe v. Metro. Police Dep't of D.C.*, 445 F.3d 460, 469 (D.C. Cir. 2006) ("Because the four Jane Does were arrested for a civil offense, their claims state a cause of action under the Fourth Amendment."); *see also Allen v. City of Portland*, 73 F.3d 232, 237 (9th Cir. 1995) ("probable cause can only exist in relation to criminal conduct"); *McKinney v. Fields*, 2010 WL 3583017, at *6 (E.D. Mich. Sept. 10, 2010) ("The concept of probable cause makes sense only in relation to *criminal* offenses . . . [and as] a result, an arrest for a 'civil infraction,' . . . is 'unreasonable.'" (citations omitted)).[11]

----

[11]As the court noted in *Mercado I*:

-15-

The Supreme Court has characterized deportation and removal proceedings as "civil in nature." *Padilla v. Kentucky*, 559 U.S. 356, 365 (2010); *see also Arizona v. United States*, ___ U.S. ____, 132 S.Ct. 2492, 2505 (2012) ("As a general rule, it is not a crime for a removable alien to remain present in the United States.").  Lower federal courts have done so as well.  *See, e.g., Santos v. Frederick Cnty. Bd. of Comm'rs*, 725 F.3d 451, 465 (4th Cir. 2013) ("Because civil immigration violations do not constitute crimes, suspicion or knowledge that an individual has committed a civil immigration violation, by itself, does not give a law enforcement officer probable cause to believe that the individual is engaged in criminal activity."); *Melendres v. Arpaio*, 695 F.3d 990, 1001 (9th Cir. 2012) ("[B]ecause mere unauthorized presence is not a criminal matter, suspicion of unauthorized presence alone does not give rise to an inference that criminal activity is 'afoot.'" (citation omitted)).[12] In *Santos* the Fourth Circuit held that "absent express direction or authorization by federal statute or federal officials, state and local law enforcement officers may not detain or arrest an individual solely based on known or suspected civil violations of federal immigration law." *Santos*, 725 F.3d at 465.

---

> The court's holding today is limited to the facts alleged and does not address whether, and to what extent, the Fourth Amendment limits *federal* immigration officials (or those to whom immigration authority has been properly delegated) from arresting individuals suspected of immigration violations.

*Mercado I*, 2016 WL 3166306, at *6 n.14.

[12]Dallas County agrees that "[i]mmigration proceedings are civil in nature."  Supp. Reply 4.

-16-

In *Mercado I* the court dismissed plaintiffs' § 1983 claims, holding, *inter alia*, that they had failed to plausibly allege that Dallas County lacked probable cause to believe that they had committed a criminal offense. *Mercado I*, 2016 WL 3166306, at *7. In their amended complaint, plaintiffs allege, *inter alia*, for each individual plaintiff, that after he was arrested, an immigration hold was placed on his file; that ICE sent detainers requesting that Dallas County detain each plaintiff for transfer to ICE after he would otherwise have been released; that each plaintiff was eligible for release due to Dallas County's dropping all pending criminal charges, the detainee's being found innocent of all pending criminal charges, the detainee's pleading guilty but receiving no additional jail time, or the detainee's pleading guilty and serving his sentence in the DCJ, such that Dallas County no longer had probable cause to hold him for his original alleged criminal offense; that instead of releasing each plaintiff, Dallas County maintained custody over him for transfer to ICE; that the ICE detainer for each plaintiff does not indicate that he had committed or was committing a crime[13]; that no plaintiff was charged or convicted of an immigration crime and or guilty of

---

[13]Dallas County has refused to provide plaintiffs copies of the detainers that ICE sent to Dallas County for each individual plaintiff. For some plaintiffs, the amended complaint alleges that "the detainer does not indicate that [the individual plaintiff] had committed or was committing a crime," and that "[t]he form used by ICE generally indicates civil immigration violations, not criminal violations." Am. Compl. ¶ 54; *see also id.* at ¶¶ 55-63, 65-73. For plaintiffs who were arrested after June 2015, plaintiffs allege:

> ICE used either the I-247N or I-247D form. Neither the I-247D form nor the I-247N form provides probable cause of a criminal violation. The I-247D form explicitly only claims that "probable cause exists that the subject is a removable alien," and the I-247N form explicitly only claims that "DHS suspects that

an immigration crime[14]; that there was nothing in the IDENT database that would indicate that the plaintiff had committed or was committing a crime; that Dallas County overdetained each plaintiff solely based on an ICE detainer that did not indicate that he had committed or were committing a crime; and that Dallas County held each plaintiff for transfer to ICE without probable cause to believe that he had committed or was committing a crime.  Am. Compl. ¶¶ 54-73.  The court concludes that these allegations are sufficient to allege that Dallas County detained the plaintiffs after they were otherwise eligible for release, solely on the basis of Dallas County's belief that plaintiffs had committed a *civil* immigration offense and without probable cause to believe they had committed a *criminal* offense.  In other words, plaintiffs have plausibly alleged—and Dallas County does not dispute—that Dallas

---

the subject is a removable alien."

*Id.* at ¶¶ 56, 68, 69, 70, 71, 73.  And for plaintiff Andres Torres Cabrera, the amended complaint alleges that "[t]he detainer for Mr. Torres Cabrera only shows that he was 'subject to removal' and 'has a prior felony conviction.'" *Id.* at ¶ 64.

[14]Plaintiffs allege, for each individual detainee other than Jose Lopez-Aranda, Javier Navarette, Andres Torres Cabrera, Jeremias Chevez, and Jose Valenciano, that they were

> innocent of any of the following immigration crimes: bringing in and harboring aliens (8 U.S.C. § 1324); unlawful employment of aliens (8 U.S.C. § 1324a); willful failure to disclose role as document preparer (8 U.S.C. § 1324c(e)(1)); improper entry (8 U.S.C. § 1324(a)); marriage fraud (8 U.S.C. § 1325(c)); immigration-related entrepreneurship fraud (8 U.S.C. § 1325(d)); illegal reentry (8 U.S.C. § 1326); aiding or assisting certain aliens to enter (8 U.S.C. § 1327); and importation of alien for immoral purpose (8 U.S.C. § 1328).

Am. Compl. ¶ 54.

County detained them after they were otherwise eligible for release, without probable cause to believe they had committed or were committing a criminal offense. These allegations plausibly allege a violation of the Fourth Amendment.

3

Dallas County maintains that its conduct was justified based on the mandatory nature of the ICE detainers. It contends that, to the extent it detained any plaintiff after he was otherwise eligible for release, it did so "in compliance with 8 C.F.R. § 287.7(d) and the ICE detainer," and it "was simply complying with its duty to cooperate with ICE and follow federal law." Reply 6. The court concludes, however, that 8 C.F.R. § 287.7(d) does not mandate that local law enforcement detain persons who are subject to detainers; instead, it only requests voluntary compliance in detaining suspected aliens.

8 C.F.R. § 287.7(a) authorizes the issuance of detainers, providing, in pertinent part:

> [a] detainer *serves to advise* another law enforcement agency that the Department seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien. *The detainer is a request* that such agency advise the Department, prior to release of the alien, in order for the Department to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible.

8 C.F.R. § 287.7(a) (emphasis added). Section 287.7(d) states, under the heading "Temporary detention at Department request":

> Upon a determination by the Department to issue a detainer for an alien not otherwise detained by a criminal justice agency, such agency shall maintain custody of the alien for a period not to exceed 48 hours, excluding Saturdays, Sundays, and holidays

in order to permit assumption of custody by the Department.

*Id.* § 287.7(d).

In *Galarza v. Szalczyk*, 745 F.3d 634 (3d Cir. 2014), the Third Circuit addressed whether immigration detainers issued pursuant to 8 C.F.R. § 287.7 impose mandatory obligations on state and local law enforcement agencies to detain suspected aliens subject to removal. *Id.* at 639. It concluded that 8 C.F.R. § 287.7 does not compel state or local law enforcement agencies to detain suspected aliens subject to removal pending release to immigration officials. Instead, it "merely authorizes the issuance of detainers as requests to local [law enforcement agencies]." *Id.* at 645. In reaching its holding, the court first considered the language of 8 C.F.R. § 287.7. It explained that

> [t]he words "shall maintain custody," in the context of the regulation as a whole, appear next to the use of the word "request" throughout the regulation. Given that the title of § 287.7(d) is "Temporary detention at Department request" and that § 287.7(a) generally defines a detainer as a "request," it is hard to read the use of the word "shall" in the timing section to change the nature of the entire regulation.

*Id.* at 640. The court then noted that, even if the use of the word "shall" in § 287.7(d) created some ambiguity, no court of appeals had ever described ICE detainers as anything but requests; no provisions of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, authorized federal officials to command local or state officials to detain suspected aliens subject to removal; and all federal agencies and departments having an interest in the matter had consistently described such detainers as requests. *Id.* Moreover, the court held that, "[e]ven if there were any doubt about whether immigration detainers are requests and not

mandatory orders to local law enforcement officials, settled constitutional law clearly establishes that they must be deemed requests." *Id.* at 643.  This is because "[u]nder the Tenth Amendment, immigration officials may not order state and local officials to imprison suspected aliens subject to removal at the request of the federal government," and "a conclusion that a detainer issued by a federal agency is an order that state and local agencies are compelled to follow, is inconsistent with the anti-commandeering principle of the Tenth Amendment." *Id.*  Accordingly, on the basis that ICE detainers are *requests*, not mandatory orders, the Third Circuit concluded that the defendant county "was free to disregard the ICE detainer, and it therefore [could not] use as a defense [to the plaintiff's § 1983 claim] that its own policy did not cause the deprivation of [the plaintiff's] constitutional rights." *Id.* at 645.

Although the Fifth Circuit has not yet addressed this issue, several district courts have agreed with the reasoning in *Galarza* and have held that ICE detainers are *requests* that state law enforcement agencies are not required to follow.  *See, e.g., Flores v. City of Baldwin Park*, 2015 WL 756877, at *4 (C.D. Cal. Feb. 23, 2015) ("federal law leaves compliance with immigration holds wholly within the discretion of states and localities."); *Lucatero v. Haynes*, 2014 WL 6387560, at *2 (W.D.N.C. Nov. 14, 2014) ("As the regulation itself explains, a Form I-247 detainer is merely a request, not a directive, for law enforcement agencies to inform the [DHS] of a pending release date for the person for whom a detainer has been issued."); *Moreno v. Napolitano*, 2014 WL 4911938, at *5 (N.D. Ill. Sept. 30, 2014) ("[T]his Court is persuaded that state and local [law enforcement agencies] are not legally required to comply with I-247 detainers."); *Villars v. Kubiatowski*, 45 F.Supp.3d 791, 802

-21-

(N.D. Ill. 2014) ("The Third Circuit's well-reasoned opinion [in *Galarza*] and the plain language of the detainer itself persuade the Court that the [defendants] were not obligated to detain [the plaintiff] pursuant to the ICE detainer."); *Miranda-Olivares v. Clackamas Cnty.*, 2014 WL 1414305, at *8 (D. Or. Apr. 11, 2014) ("[T]his court concludes that 8 C.F.R. § 287.7 does not require [law enforcement agencies] to detain suspected aliens upon receipt of a Form I-247 from ICE and that the Jail was at liberty to refuse ICE's request to detain [the plaintiff] if that detention violated her constitutional rights. Accordingly, the County cannot avail itself of the defense that its practice and custom did not cause the allegedly unlawful detention").

Absent Fifth Circuit authority to the contrary, the court will follow *Galarza* and the district courts that rely on its reasoning or otherwise reach the same result. Under *Galarza* although 8 C.F.R. § 287.7(d) uses the word "shall," "the word 'shall' serves only to inform an agency that otherwise decides to comply with an ICE detainer that it should hold the person no longer than 48 hours." *Galarza*, 745 F.3d at 640. 8 C.F.R. § 287.7 does not compel state or local law enforcement agencies to detain suspected aliens subject to removal pending release to immigration officials, but "merely authorizes the issuance of detainers as requests to local [law enforcement agencies]." *Id.* at 645. Accordingly, the court rejects Dallas County's argument that "if any of the Plaintiffs was detained in the DCJ after the time he was eligible for release on state criminal charges it was mandated by [8 C.F.R. § 287.7(d)]." D. 8/19/16 Br. 21.

4

The court also declines to accept Dallas County's argument that plaintiffs have failed to state a claim because they have not alleged "that the immigration detainers were facially invalid." *Id.* Dallas County maintains that, when a law enforcement official detains a person on the basis of some form of legal process authorizing the detention, the official's actions do not violate the Fourth Amendment so long as the process relied on is facially valid. The two Fifth Circuit cases on which Dallas County relies, however, are not factually on point.[15]

In *Mays v. Sudderth*, 97 F.3d 107 (5th Cir. 1996), the arresting officer acted in compliance with a facially valid court order. *Id.* at 113 (holding that official acting within scope of his authority is entitled to absolute immunity when he acts in compliance with facially valid judicial order issued by court acting within its jurisdiction). In *Duckett v. City of Cedar Park, Texas*, 950 F.2d 272 (5th Cir. 1992), the arresting officer was acting pursuant to a facially valid warrant. *Id.* at 280 (holding that facially valid warrant provided probable cause to arrest suspect, and officer who made arrest pursuant to facially valid warrant was entitled to qualified immunity). The present case involves neither a facially valid court order

---

[15]Dallas County also cites *Chavez v. City of Petaluma*, 2015 WL 6152479, at *6, 11 (N.D. Cal. Oct. 20, 2015), *Gardner v. California Highway Patrol*, 2015 WL 4456191, at *16 (E.D. Cal. July 20, 2015), and *Puccini v. United States*, 1996 WL 556987, at *1 (N.D. Ill. Sept. 26, 1996), for the proposition that, when a law enforcement official detains a person on the basis of some form of legal process authorizing the detention—including detainers or holds issued by non-judicial entities—the official's actions do not violate the Fourth Amendment so long as the process relied upon is facially valid. These cases, however, are not binding on this court. Nor are they factually persuasive because none involves detention on the basis of a non-binding ICE detainer that does not provide probable cause to believe that the detainee has committed a criminal offense.

nor a facially valid warrant.  Instead, plaintiffs allege that they were detained "solely based

on an ICE detainer," Am. Compl. ¶ 54, that, unlike a warrant, did not provide Dallas County

probable cause to believe that the plaintiffs had committed or were committing a *criminal*

offense.  And unlike a facially valid court order, which leaves the official charged with

executing it "no choice but to do so," *Mays*, 97 F.3d at 113, an ICE detainer is a "request"

that Dallas County was at liberty to ignore.[16]  Thus although plaintiffs have not alleged that

the ICE detainers were *facially invalid*, they have plausibly pleaded that, on their face, the

ICE detainers did not provide Dallas County sufficient probable cause to withstand Fourth

Amendment scrutiny.  The court concludes above that plaintiffs have plausibly alleged a

violation of their Fourth Amendment rights.  Plaintiffs' failure to allege that the ICE

detainers were facially invalid does not change this conclusion.[17]

---

[16]*Mays* and *Duckett* are also distinguishable because they address an arresting officer's ability to rely on a facially valid court order/warrant in the context of the doctrines of absolute immunity and qualified immunity.

[17]In their first supplemental reply to plaintiffs' response, Dallas County makes the following arguments: (1) the detainer authority of DHS arises from the Secretary's power under 8 U.S.C. § 1103(a)(3) and from DHS's general authority to arrest and detain individuals subject to removal pursuant to §§ 236 and 287 of the INA; (2) under 8 U.S.C. § 1252c, DHS may delegate arrest authority to state and local officials; (3) detention by state and local government officials pursuant to a federal immigration detainer is authorized by federal law, including 8 U.S.C. §§ 1357(g)(10), which states that a formal agreement is not necessary for "any officer or employee of a State or political subdivision of a State . . . to cooperate with the Attorney General in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States"; (4) state and local law enforcement agencies may rely on a detainer as a matter of comity and pursuant to the "collective knowledge doctrine"; and (5) immigration proceedings are civil in nature and therefore the various protections that apply in the context of a criminal trial do not apply in the immigration context.  Dallas County did not raise any of these grounds for dismissal in its initial motion, however, and this court has long declined to consider arguments raised for

D

The court next considers Dallas County's challenge to plaintiffs' § 1983 substantive due process claim based on Dallas County's alleged refusal to allow plaintiffs pretrial release on bond.

1

Dallas County contends that, to the extent plaintiffs' § 1983 claim based on the denial of pretrial release on bond is brought under the Due Process Clause of the Fourteenth Amendment, this claim must be dismissed because plaintiffs have also invoked the Fourth Amendment, which provides an explicit textual source of constitutional protection against unreasonable seizures by governmental officials, and the Fourth Amendment, rather than the more generalized notion of substantive due process, must be the exclusive guide for analyzing plaintiffs' claims under § 1983.

Plaintiffs respond that freedom from pretrial detention is a fundamental right protected by the Due Process Clause of the Fourteenth Amendment; that due process protections are not duplicative of those provided by the Fourth Amendment; that under the decisions in *United States v. Salerno*, 481 U.S. 739 (1987), and *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772

_____

the first time in a reply brief. *See, e.g., Jacobs v. Tapscott*, 2006 WL 2728827, at *7 (N.D. Tex. Sept. 25, 2006) (Fitzwater, J.) ("[T]he court will not consider an argument raised for the first time in a reply brief." (citing *Senior Unsecured Creditors' Comm. of First RepublicBank Corp. v. FDIC*, 749 F. Supp. 758, 772 (N.D. Tex. 1990) (Fitzwater, J.))), *aff'd*, 277 Fed. Appx. 483 (5th Cir. 2008). To the extent that Dallas County is doing anything more than merely responding to plaintiffs' arguments in their opposition brief, the court declines to consider these arguments as new grounds supporting dismissal.

(9th Cir. 2014) (en banc), Dallas County's policy of denying pretrial release for those with immigration holds offends due process, because Dallas County does not use "narrowly focused," "carefully limited exceptions" to the general prohibition against pretrial detention before a finding of guilt, P. Br. 21 (brackets and citations omitted); that Dallas County's practice of refusing immediate pretrial release on bond after Dallas County courts set bail violates due process by imposing punishment before trial; and that Dallas County also offends due process by ignoring the liberty interest created by Tex. Code Crim. Proc. Ann. Art. 17.29,[18] which guarantees immediate release on bond.

2

In *Mercado I* the court *sua sponte* dismissed plaintiffs' § 1983 substantive due process claim based on the denial of pretrial release on bond, holding that plaintiffs failed to plausibly allege that Dallas County or Sheriff Valdez had refused to allow them to post bond and secure their release. *Mercado I*, 2016 WL 3166306, at *8. The court also dismissed plaintiffs' § 1983 substantive due process claim based on Dallas County and Sheriff Valdez's policy of honoring ICE requests to detain, and detaining individuals subject to an immigration hold even after they were otherwise cleared for release. As the court explained:

> "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the

───────────────

[18]Tex. Code Crim. Proc. Ann. Art. 17.29(a) provides: "[w]hen the accused has given the required bond, either to the magistrate or the officer having him in custody, he shall at once be set at liberty."

guide for analyzing these claims.'" *Albright*, 510 U.S. at 273 (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Plaintiffs' remaining substantive due process claim is based on the allegation that Dallas County honored ICE requests to detain, and detained, individuals subject to immigration holds, even after those individuals were otherwise cleared for release. This is the same factual basis that plaintiffs rely on to support their Fourth Amendment claim. As explained above, the Fourth Amendment protects against "unreasonable searches and seizures" by the government. It is undisputed that pretrial detention constitutes a "seizure" within the meaning of the Fourth Amendment. Because the Fourth Amendment protects against the type of conduct plaintiffs allege in support of their substantive due process claim, this claim is "covered by" the Fourth Amendment and should be analyzed only under that constitutional provision.

*Mercado I*, 2016 WL 3166306, at *9 (some citations omitted).

In their amended complaint, plaintiffs plead their substantive due process claim only in connection with their allegation that they were denied pretrial release on bond. In support of this claim, plaintiffs allege that "Defendants imposed pretrial detention on Plaintiffs, infringing the Plaintiffs' strong interest in liberty. This intentional or reckless pretrial detention is not narrowly tailored to serve a compelling state interest."[19] Am. Compl. ¶ 104. As in *Mercado I*, however, the factual basis on which plaintiffs rely in support of their due process claim—i.e., that Dallas County denied them the opportunity for pretrial release on bond—is the same factual basis that they rely on to support their Fourth Amendment claim.

_____

[19]Plaintiffs acknowledge in footnote 6 of their amended complaint that, although they have repleaded their "pretrial-release claims" under both the Fourth Amendment and the Due Process Clause, they "do not expect that the due process claims will survive if the Court reapplies the reasoning in its prior opinion." Am. Compl.¶ 104 n.6.

Plaintiffs allege that the Fourth Amendment prevents arrests and seizures, absent probable cause; that Dallas County must allow an opportunity for pretrial release that satisfies the Fourth Amendment; and that "[i]f Dallas County had allowed bail, Dallas County would have needed to release Plaintiffs if Plaintiffs had paid bail, as Dallas County had no other probable cause to believe that any Plaintiff had committed or was committing criminal activity[.]"[20] *Id.* ¶ 107.  Accordingly, the court holds, as it did in *Mercado I*, that "[b]ecause the Fourth Amendment protects against the type of conduct plaintiffs allege in support of their substantive due process claim, this claim is 'covered by' the Fourth Amendment and should be analyzed only under that constitutional provision." *Mercado I*, 2016 WL 3166306, at *9 (citation omitted).  The court therefore grants Dallas County's motion to dismiss plaintiffs' substantive due process claim for the reasons explained in *Mercado I* and here. *Id.*

E

The court now turns to Dallas County's remaining arguments directed at plaintiffs' § 1983 claim based on the allegation that Dallas County's alleged refusal to allow them pretrial release on bond violated their constitutional rights.

1

Dallas County argues that plaintiffs' Fourth Amendment "failure to allow bond claim"

---

[20]Plaintiffs clarify in their response their belief that Dallas County violated their Fourth Amendment rights by denying them pretrial release on bond (i.e., by *further* detaining or "seizing" them), without probable cause to believe they had committed or were committing a crime.

fails because they have not alleged that Dallas County or Sheriff Valdez had the authority to set or allow them to post bonds in connection with the state criminal charges pending against them; plaintiffs do not allege that any of them actually posted bond in the requisite amount to become eligible for release on bond, and, absent specific allegations that the plaintiffs actually posted bonds, none of them had a right to be released regardless of the existence of an immigration detainer; and the uncontroverted evidence submitted by Dallas County establishes that none of the plaintiffs was denied bond because of an immigration detainer or detained after he posted bond.

Plaintiffs respond that they have plausibly alleged that Dallas County does not allow immediate pretrial release of those with immigration holds, regardless of whether they post bail; that accepting the pleaded facts as true, plaintiffs have plausibly alleged that Dallas County would have refused immediate release for any plaintiff who may have posted bail; that certain plaintiffs allege that they attempted to post bail but were rebuffed; and that for the remaining plaintiffs—all of whom have alleged a belief that posting bail would be futile—the court should not require plaintiffs to attempt to post bail to bring suit.

2

Plaintiffs have alleged that Jose Lopez-Aranda "attempted to pay bond, and Dallas County would not accept the bond," Am. Compl. ¶ 83; that Moises Martinez "attempted to pay bond, but Dallas County would not allow Mr. Martinez to do so, due to the immigration hold," *id.* at ¶ 84; and that Eleazar Saavedra "attempted to pay bail, but Dallas County would not allow him to because of the pending immigration hold," *id.* ¶ 88.  For each remaining

-29-

plaintiff, they allege that bail was nominally set for the plaintiff, showing that he was eligible for pretrial release; that the plaintiff did not attempt to post bond because he believed it was futile to do so; that "[i]t was well known that Dallas County refused immediate release on bond for any detainee with an immigration hold"; that the plaintiff knew he had an immigration hold; and that but for Dallas County's practices of refusing immediate release on bond for any detainee with an immigration hold, the plaintiff "could have and would have secured a bond to ensure pretrial release." *Id.* ¶ 78; *see also* ¶¶ 79-82, 85-87, 89-97. The court has already concluded that, under the futility doctrine, plaintiffs have standing to bring their § 1983 claim based on the denial of pretrial release. *See infra* § II (D). The court concludes that the allegations in the amended complaint are also sufficient to plausibly allege that Dallas County had a widespread and widely known practice of refusing to release on bond pretrial detainees with immigration holds, that bond was set for each of the plaintiffs, and that, despite bond being set, each plaintiff was denied pretrial release on bond either because (i) he attempted to post bond and it was refused, or (ii) any attempt to post bond would have been futile due to Dallas County's widely known practice of refusing to release on bond pretrial detainees who were subject to immigration holds.[21]

---

[21]Defendants contend that "the uncontroverted evidence submitted by Dallas County establishes that (1) none of the Plaintiffs was denied bond because of an immigration detainer; or (2) detained after he posted bond." D. 8/19/16 Br. 24-25 (citing D. App. 3). But the court cannot rely on evidence outside of the complaint and not referenced by it without converting Dallas County's motion into a motion for summary judgment. *See Sivertson v. Clinton*, 2011 WL 4100958, at *3 n.4 (N.D. Tex. Sept. 14, 2011) (Fitzwater, C.J.). The court declines to convert Dallas County's motion to dismiss into a summary judgment motion.

Dallas County does not otherwise argue that plaintiffs' denial of pretrial release on bond claim fails to allege a constitutional violation.  Accordingly, the court will assume, for purposes of this motion, that plaintiffs have adequately pleaded a violation of the Fourth Amendment as a result of Dallas County's practice of denying pretrial release on bond.

F

Dallas County contends that plaintiffs have failed to plead a policymaker and an official policy or practice that served as the moving force behind the alleged constitutional violation.

1

A municipality is a "person" subject to suit under § 1983 under certain circumstances. *See Monell*, 436 U.S. at 690.  Although a municipality cannot be held liable simply on a theory of respondeat superior, *id.* at 691, it can be held liable if a deprivation of a constitutional right was inflicted pursuant to an official policy or custom, *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001).  Municipal liability requires proof of three elements: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom."  *Valle*, 613 F.3d at 541-42 (quoting *Pineda*, 291 F.3d at 328).

The first element requires that plaintiffs adequately plead an official policy or custom. "[A] policy can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority." *Id.* at 542 (citing *Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003)).

-31-

Although a "single decision by a policy maker may, under certain circumstances, constitute a policy for which a municipality may be liable[,] . . . this 'single incident exception' is extremely narrow and gives rise to municipal liability only if the municipal actor is a final policymaker." *Id*. (citations, brackets, and some internal quotation marks omitted). A custom is "a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Piotrowski*, 237 F.3d at 579 (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc) (per curiam)).

To satisfy the second element, plaintiffs must adequately plead the identity of a policymaker with "final policymaking authority." *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). "A 'policymaker' must be one who takes the place of the governing body in a designated area of city administration." *Webster*, 735 F.2d at 841 (citing *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984) (en banc)). "City policymakers not only govern conduct; they decide the goals for a particular city function and devise the means of achieving those goals. . . . [T]hey are not supervised except as to the totality of their performance." *Bennett*, 728 F.2d at 769. "[The court's] analysis must also take into account the difference between final decisionmaking authority and final policymaking authority, a distinction that this circuit recognized as fundamental[.] . . . [D]iscretion to exercise a particular function does not necessarily entail final policymaking authority over that function." *Bolton v. City of Dallas,*

*Tex.*, 541 F.3d 545, 548-49 (5th Cir. 2008) (per curiam) (citations omitted); *see also Jett v. Dall. Indep. Sch. Dist.*, 7 F.3d 1241, 1246-47 (5th Cir. 1993) (explaining distinction between final policymaking authority and mere decisionmaking).

The third element requires that plaintiffs adequately plead that the municipal policy or custom was the "moving force" of the constitutional deprivation, which requires a "high threshold of proof." *Piotrowski*, 237 F.3d at 580 (citing *Monell*, 436 U.S. at 694). Plaintiffs "must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Valle*, 613 F.3d at 542 (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)). Plaintiffs therefore "must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Id.* (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla.*, 520 U.S. at 411). Simple or even heightened negligence is insufficient to meet the deliberate indifference requirement. *Piotrowski*, 237 F.3d at 579 (quoting *Bd. of Cnty. Comm'rs*, 520 U.S. at 407).

2

Dallas County's argument with respect to the additional requirements for municipal liability is as follows:

> Here the plaintiffs have failed to articulate any specific facts to establish that an official governmental policy of Dallas County promulgated by an official county policy maker was the moving force behind or actual cause of the violation of their constitutional rights. . . . The Plaintiffs have also failed to show

-33-

that the alleged governmental policy was adopted with
deliberate indifference to the known or obvious fact that a
constitutional violation would result from complying with the
federal regulation under the immigration detainers.  Because the
Plaintiffs have failed to plead any facts upon which the Court
might reasonably infer that an official Dallas County policy, as
defined above, was the moving force behind the violation of
their constitutional rights under the Fourth Amendment their
claims against it should also be dismissed for this reason.

D. 8/19/16 Br. 23.  With respect to plaintiffs' claim for failure to allow bond, Dallas County

argues:

Finally the Plaintiffs have also failed to show that a Dallas
County policy, promulgated by an official policymaker with
deliberate indifference to their constitutional rights, denied them
bond or detained them after they made bail or were otherwise
cleared for release. . . .  Because the Plaintiffs have also failed
to plead specific facts upon which this Court might reasonably
infer that an official Dallas County policy was the moving force
behind the violation of their constitutional rights under the
Fourth Amendment in this regard, this claim must also fail as a
matter of law.

*Id.* at 25.  The court disagrees.

In support of their denial of pretrial release claim, plaintiffs allege that Dallas County

had a widespread policy and practice of refusing immediate release on bond for detainees

with immigration holds and that this policy is the "moving force" for their § 1983 claim.

They further allege that "Dallas County and Sheriff Valdez are responsible for these policies

and practices," and that, in particular, "Sheriff Valdez oversees and is responsible for Dallas

County's decisions on (i) whether to refuse bond posted for those with immigration holds,

and (ii) whether to detain individuals with immigration holds that are otherwise cleared for

-34-

release." Am. Compl. ¶ 108.  In support of their "overdetention" claim, plaintiffs allege that Dallas County had a policy and practice of detaining individuals with immigration holds who have otherwise been cleared for release, without requiring probable cause to believe that a different criminal offense has been or is being committed or other authority that would satisfy the Fourth Amendment, and that this policy was the "moving force" for plaintiffs' § 1983 claim.  In addition, they allege that "Dallas County and Sheriff Valdez are responsible for the policy," and that "[i]n particular, Sheriff Valdez oversees and is responsible for Dallas County's decision on whether to detain individuals with immigration holds that are otherwise cleared for release." *Id.* ¶ 117.  These allegations are sufficient at the Rule 12(b)(6) stage to plausibly allege the elements for municipal liability.  Moreover, this court has explained that "it is not sufficient in the context of [a] motion[] to dismiss for defendant[] to effectively shift to the court the burden of scrutinizing the amended complaint to determine whether there are deficiencies with respect to" plaintiffs' allegations. *Clapper v. Am. Realty Inv'rs, Inc.*, 2015 WL 3504856, at \*13 (N.D. Tex. June 3, 2015) (Fitzwater, J.).  "Generally, a movant under Rule 12(b)(6) . . . must show why the pleading being challenged is insufficient rather than simply point to the pleading and assert that it is defective." *Id.* at \*13 n.21.  Dallas County has failed to point to any specific deficiency in the amended complaint with respect to plaintiffs' pleading of municipal liability under § 1983.  Accordingly, the court denies Dallas County's motion to dismiss the amended complaint on this basis.

In sum, the court concludes that Dallas County is not entitled to a dismissal of plaintiffs' § 1983 claim based on an alleged violation of the Fourth Amendment.

Accordingly, the court denies Dallas County's motion to dismiss this claim.

## IV

Dallas County moves to dismiss plaintiffs' amended complaint under Rule 12(b)(7), contending that, under Rule 19(a),[22] the United States is a required and indispensable party to this action, and that it may not feasibly be joined because it is entitled to sovereign immunity.

Rule 12(b)(7) enables a party to move for dismissal for "failure to join a party under Rule 19." "'Once an issue of compulsory joinder is raised, the court initially must determine whether the absent person's interest in the litigation is sufficient to satisfy one or more of the tests set out in the first sentence of Rule 19(a).'" *Johnston v. Capital Accumulation Plan of Chubb Corp.*, 1998 WL 907002, at *4 (N.D. Tex. Dec. 17, 1998) (Fitzwater, J.) (quoting 7 Charles A. Wright, et al., *Federal Practice & Procedure* § 1604, at 40 (2d ed. 1986)).

> If joinder is warranted, then the person will be brought into the lawsuit. But if such joinder would destroy the court's jurisdiction, then the court must determine under Rule 19(b)

---

[22]Rule 19(a) provides, in pertinent part:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

-36-

> whether to press forward without the person or to dismiss the litigation. Factors to consider under Rule 19(b) include "(1) prejudice to an absent party or others in the lawsuit from a judgment; (2) whether the shaping of relief can lessen prejudice to absent parties; (3) whether adequate relief can be given without participation of the party; and (4) whether the plaintiff has another effective forum if the suit is dismissed."

*HS Res., Inc. v. Wingate*, 327 F.3d 432, 439 (5th Cir. 2003) (footnotes omitted) (quoting *Cornhill Ins. PLC v. Valsamis, Inc.*, 106 F.3d 80, 84 (5th Cir. 1997)); *see also Johnston*, 1998 WL 907002, at *4 ("The '[joinder] decision has to be made in terms of the general policies of avoiding multiple litigation, providing the parties with complete and effective relief in a single action, and protecting the absent persons from the possible prejudicial effect of deciding the case without them.'" (alteration in original) (citation omitted)). The court concludes that the reasons that Dallas County offers in support of joinder fail to show that the United States should be joined as a party under Rule 19.

Dallas County contends that the regulation at issue here, 8 C.F.R. § 287.7, is ambiguous because subsection (a) states that an ICE detainer is a "request" while subsection (d) provides that the local law enforcement agency "shall" maintain custody of the alien pursuant to the ICE detainer. It argues that the detention of any plaintiff in the DCJ after the time he was otherwise eligible for release was mandated by 8 C.F.R. § 287.7(d); that challenges to the federal regulation itself must be addressed to the United States, which has not been joined as a party to this suit; that the United States cannot be feasibly joined because it is entitled to sovereign immunity from the plaintiffs' claims for damages; that a judgment rendered in the absence of the United States will cause substantial prejudice to the United

States if the court's decision creates doubt as to the validity of the federal regulation and its applicability to state and local law enforcement agencies that detain aliens pursuant to immigration holds, and will cause substantial prejudice to Dallas County because the decision may expose it to multiple lawsuits in different courts with the threat of inconsistent liabilities and obligations for detaining individuals identified as aliens, and subject to federal immigration detainers; that the court cannot fashion an adequate remedy because there is no judgment that will effectively settle the plaintiffs' claims without causing substantial prejudice to both the United States and Dallas County; and that plaintiffs have adequate remedies available to them if this action is dismissed for non-joinder, including seeking post-deprivation compensatory relief against the individual ICE agents for wrongful issuance of immigration detainers.

The court rejects these arguments. It has already concluded, *see supra* § III (C)(3) that 8 C.F.R. § 287.7 is unambiguous and does not *require* Dallas County to detain individuals subject to an ICE detainer. Accordingly, there is no reason that the United States should be joined as a necessary party under Rule 19. Moreover, there is no reason that complete relief cannot be accorded among those already parties, and none of the general policy concerns discussed above is present in this action.

The court therefore denies Dallas County's motion to dismiss under Rule 12(b)(7).

V

Dallas County moves under Rule 12(f) to strike the exhibits to plaintiffs' amended complaint, contending that these exhibits are not permissible as written instruments under

-38-

Rule 10(c) and should be stricken from the record.

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Rule 12(f). The decision to grant a motion to strike is within the court's discretion. *Jacobs v. Tapscott*, 2004 WL 2921806, at *2 (N.D. Tex. Dec. 16, 2004) (Fitzwater, J.), *aff'd on other grounds*, 277 Fed. Appx. 483 (5th Cir. 2008). Motions to strike a portion of a pleading are generally viewed with disfavor and are seldom granted, because these motions seek a "drastic remedy" and are often "sought by the movant simply as a dilatory tactic." *FDIC v. Niblo*, 821 F.Supp. 441, 449 (N.D. Tex. 1993) (Cummings, J.) (citing *Augustus v. Bd. of Pub. Instruction of Escambia Cnty., Fla.*, 206 F.2d 862, 868 (5th Cir. 1962)). "Matter will not be stricken from a pleading unless it is clear that it can have no possible bearing upon the subject matter of the litigation. If there is any doubt as to whether under any contingency the matter may raise an issue, the motion should be denied." *Pan Am. Life Ins. Co. v. Blanco*, 311 F.2d 424, 428 n.13 (5th Cir. 1962) (citation omitted); *see also Florance v. Buchmeyer*, 500 F.Supp.2d 618, 645 (N.D. Tex. 2007) (Ramirez, J.) (stating that Rule 12(f) motions "are viewed with disfavor" and should be granted "only when the pleading to be stricken has no possible relation to the controversy." (citations omitted)), *rec. adopted*, 500 F.Supp.2d 618 (N.D. Tex. 2007) (Lynn, J.).

Dallas County has not shown that the exhibits to plaintiffs' amended complaint are redundant, scandalous, immaterial, or impertinent to the controversy itself. *See United States v. Coney*, 689 F.3d 365, 379 (5th Cir. 2012) (concluding that district court did not abuse its discretion in denying motion to strike where "disputed statements were material and pertinent

to the underlying controversy").[23]   Accordingly, Dallas County's Rule 12(f) motion to strike is denied.

## VI

The court denies as moot plaintiffs' motion to compel Dallas County to provide them with copies of their ICE detainers.  On March 3, 2016, the court granted defendants' motion to stay discovery, staying "all initial disclosures and discovery . . . pending the court's decisions on defendants' motions to dismiss and on whether defendant Sheriff Lupe Valdez is entitled to qualified immunity."  Mar. 3, 2016 Order at 1.  Plaintiffs do not name Sheriff Valdez as a defendant in their amended complaint, and the court is deciding today all pending motions to dismiss.  Accordingly, as of the date this memorandum opinion and order is filed, the discovery stay is lifted.  Plaintiffs' motion to compel is therefore denied as moot.

*     *     *

For the foregoing reasons, Dallas County's motion to dismiss plaintiffs' amended complaint under Rules 12(b)(1) and 12(b)(7) is denied; its motion to dismiss plaintiffs' complaint under Rule 12(b)(6) is granted to the extent of dismissing plaintiffs' substantive due process claim, but is otherwise denied; its motion under Rule 12(f) to strike the exhibits to plaintiffs' amended complaint is denied; and plaintiffs' motion to compel detainers and

---

[23]The court has not relied on any of the exhibits to plaintiffs' amended complaint in deciding Dallas County's motions to dismiss.

lift stay is denied as moot.

      **SO ORDERED**.

      January 17, 2017.


                                _____

                                  SIDNEY A. FITZWATER

                                  UNITED STATES DISTRICT JUDGE